ELECTRONICALLY FILED - 2022 Mar 01 11:03 AM - ORANGEBURG - COMMON PLEAS - CASE#2022CP3800326

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br>COUNTY OF ORANGEBURG<br><br>JOSEPH JUNQUET<br><br>                Plaintiffs,<br>vs.<br><br>TRUCKMOVERS.COM, INC.;<br>DEALERS CHOICE TRUCKAWAY<br>SYSTEM, INC., D/B/A<br>"TRUCKMOVERS" OR D/B/A<br>"TRUCK MOVERS DEPOT";  AND<br>DENNIS E. OLSON<br><br>                Defendants. | IN THE COURT OF COMMON PLEAS<br>CIVIL ACTION NO.:<br><br><br><br>**SUMMONS**<br>**(JURY TRIAL REQUESTED)** |

TO:     THE DEFENDANTS, ABOVE-NAMED:

YOU ARE HEREBY SUMMONED and required to answer the complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to said complaint upon the subscriber, at his office at The Carolina Law Group, 824 Meeting Street, West Columbia, SC 29169, within thirty (30) days after the service thereof, exclusive of the day of such service, and if you fail to answer the complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the complaint.

*s/ William H. McAngus, Jr.*
William H. McAngus, Jr.
The Carolina Law Group
824 Meeting Street
West Columbia, South Carolina 29169
(803) 881-1110
(803) 661-6055 (FAX)
hugh@thecarolinalawgroup.com

Attorney for Plaintiffs

Dated: March 1, 2022

1

ELECTRONICALLY FILED - 2022 Mar 01 11:03 AM - ORANGEBURG - COMMON PLEAS - CASE#2022CP3800326

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br>COUNTY OF ORANGEBURG<br><br>JOSEPH JUNQUET<br><br>                Plaintiffs,<br>vs.<br><br>TRUCKMOVERS.COM, INC.;<br>DEALERS CHOICE TRUCKAWAY<br>SYSTEM, INC., D/B/A<br>"TRUCKMOVERS" OR D/B/A<br>"TRUCK MOVERS DEPOT"; AND<br>DENNIS E. OLSON<br><br><br>                Defendants. | IN THE COURT OF COMMON PLEAS<br>CIVIL ACTION NO.:<br><br><br><br>**COMPLAINT**<br>**(JURY TRIAL REQUESTED)** |

The Plaintiff Joseph Junquet. would respectfully show unto the Court that:

1. The Plaintiff is a citizen and resident of Orangeburg County, South Carolina.

2. Upon information and belief, Defendant Truckmovers.com, Inc., (hereinafter, "Truckmovers.com") is a company incorporated under the laws of the state of Missouri with its principal place of business in Jackson County, Missouri. Truckmovers.com, Inc., operates as an interstate commercial motor carrier for hire.

3. Upon information and belief, Defendant Dealers Choice Truckaway System, Inc., doing business as "Truckmovers" or "Truck Movers Depot" (hereinafter "Dealers Choice") is a company incorporated under the laws of the state of Missouri with its principal place of business in Jackson County, Missouri. Truckmovers.com, Inc., operates as an interstate commercial motor carrier for hire, bearing USDOT Number 255166 and MC-Number 180587.

4. Upon information and belief, Defendant Dennis E. Olson ("Olson") is a citizen and resident of Pima County, Arizona. At all times relevant to this Complaint Defendant Olson was operating a commercial motor vehicle under the authority of Truckmovers.com and/or

ELECTRONICALLY FILED - 2022 Mar 01 11:03 AM - ORANGEBURG - COMMON PLEAS - CASE#2022CP3800326

Dealers Choice, and was otherwise working in the course and scope of his employment and for the benefit of Truckmovers.com and/or Dealers Choice.

5. The wreck that is subject of this Complaint occurred in Orangeburg County, State of South Carolina on or about March 13, 2019.

6. On or about March 13, 2019, Plaintiff was travelling South on US 601 near Orangeburg, South Carolina, in the left hand lane, when Defendant Olson who was operating a commercial motor vehicle traveling south in the right hand lane unexpectedly made an improper left hand or U-turn turn in front of Plaintiff, causing a violent collision.

7. As a result of the collision, the Plaintiff suffered the following injuries and damages:

    a. extensive pain, mental anguish, suffering and discomfort;

    b. disability for a period of time, past and future;

    c. money spent for medical care and treatment, past, present and future;

    d. inability to carry on normal activities;

    e. permanent injuries and partial disability;

    f. emotional trauma and distress;

    g. loss of enjoyment of life; and

    h. lost earnings and income;

**FOR A FIRST CAUSE OF ACTION**
**(Against Defendant Olson)**
**Commercial Motor Vehicle Negligence**

8. Plaintiffs repeat and reallege as if verbatim paragraphs 1-7.

9. At all times relevant to this Complaint, Defendant Olson was operating a commercial motor vehicle transporting goods or property in interstate commerce.

10. In order to undertake such actions, Defendant Olson must have the knowledge and skills necessary for the safe operation of the commercial motor vehicle.

11. The safe operation of commercial motor vehicles requires specialized knowledge, skills, and additional training not necessary for the safe operation of passenger vehicles because:

   a. commercial motor vehicles are heavier than passenger vehicles and take longer to stop, as compared to a passenger vehicle operating at the same pre-braking speed, which changes the principles and procedures necessary to keep a proper lookout and to maintain a safe speed under the circumstances;

   b. commercial motor vehicles are heavier and longer than passenger vehicles, take longer to execute turning and lane change maneuvers, and have articulating trailers, as compared to passenger vehicles operating at the same pre-turn or lane change speed, which changes the principles and procedures necessary to execute safe turning, lane change, and backing maneuvers;

   c. commercial motor vehicles are heavier than passenger vehicles and cause more significant property damage and/or personal injury or death in collisions, as compared to passenger vehicles operating at the same pre-collision speed and trajectory;

   d. commercial motor vehicles utilize air brakes, which have a delay in actuation following pedal depression not found in passenger vehicles, which changes the total stopping distance of commercial vehicles and changes the principles and procedures necessary to safely stop a commercial vehicle; and,

e. commercial motor vehicles pose more of a risk of causing personal injury, death, or property damage in a collision, as compared to a collision involving a passenger vehicle operating at the same pre-collision speed and trajectory.

12. In order to undertake the safe operation of a commercial motor vehicle, Defendant Olson must have knowledge and skills in many areas, including the following:

a. the procedures for safe vehicle operations;

b. the proper procedures for performing basic maneuvers such as stopping;

c. the importance of conducting a proper visual search;

d. the importance of proper visual search methods, including seeing ahead and to the sides;

e. the principles and procedures for proper communications and hazards of failing to signal properly, including signaling intent and communicating presence;

f. the importance of understanding the effects of speed, including speed and visibility and speed and stopping distance; and,

g. the procedures and techniques for controlling the space around the vehicle, including the importance of space management, space cushions, and controlling space ahead.

13. In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to understand that safe drivers must be aware of all surrounding objects and vehicles at all times.

14. In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry that drivers understand that not keeping proper lookout is a major cause of accidents.

ELECTRONICALLY FILED - 2022 Mar 01 11:03 AM - ORANGEBURG - COMMON PLEAS - CASE#2022CP3800326

ELECTRONICALLY FILED - 2022 Mar 01 11:03 AM - ORANGEBURG - COMMON PLEAS - CASE#2022CP3800326

15. In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry that drivers look far enough ahead of their own vehicle.

16. In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry that drivers keep look 12 to 15 seconds ahead of their own vehicle.

17. In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to understand that driving too fast is a major cause of accidents; therefore, commercial drivers must know to adjust their speed depending on driving conditions.

18. In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry that drivers understand their vehicle's total stopping distance at a given speed.

19. In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry that drivers understand that it is vital to check the assess whether it is safe to move into a space on public roadways or otherwise.

20. In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to allow ample space in front of their vehicle to allow for the ability to stop suddenly should the need arise.

21. In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to understand the dangers of driving distracted. Reasonably safe drivers understand that driving a motor vehicle requires full attention on the task of driving and any distraction poses danger to vehicles and pedestrians.

22.   In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to drive at an appropriate speed to be able to stop in the distance that can be seen ahead.

23.   In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to understand and follow the proper procedures for turning and making lane changes.

24.   The injuries and damages incurred by Plaintiff were directly and proximately caused by the Defendant Olson's careless, negligent, grossly negligent, willful, wanton, reckless, and unlawful acts in one or more of the following particulars:

   a. in failing to apply the brakes of the vehicle and/or maintain them in proper working condition;

   b. in failing to steer or take other evasive action so as to avoid collision;

   c. in failing to keep a proper lookout;

   d. in failing to yield as required by law;

   e. in operating a vehicle too fast for existing conditions;

   f. in failing to observe the condition of traffic;

   g. in operating a commercial motor vehicle when he was not qualified to do so;

   h. in failing to follow the proper procedures for safe commercial vehicle operations;

   i. in failing to have the requisite knowledge and skill regarding procedures for safe vehicle operations;

   j. in failing to have the requisite knowledge and skill regarding proper procedures for performing basic maneuvers such as stopping, making lane changes, and turning;

k. in failing to have the requisite knowledge and skill regarding the importance of conducting a proper visual search and in conducting an improper visual search;

l. in failing to have the requisite knowledge and skill regarding the importance of proper visual search methods, including seeing ahead and to the sides, and in conducting an improper visual search ahead and to the sides;

m. in failing to have the requisite knowledge and skill regarding the principles and procedures for proper communications and the hazards of failing to signal properly, including signaling intent and communication presence, and failing to communicate his presence and location;

n. in improperly communicating his intent, presence, and location;

o. in failing to have requisite knowledge and skill regarding the importance of understanding the effects of speed, including speed and visibility and speed and stopping distance;

p. in operating his commercial vehicle at an improper speed given his visibility and stopping distance;

q. in failing to have the requisite knowledge and skill regarding procedures and techniques for controlling the space around the vehicle, including the importance of space management, space cushions, controlling space ahead;

r. in operating his vehicle without the proper space management, including space cushions and improperly controlling space ahead;

s. in failing to have knowledge and skill regarding the requirement to look 12 to 15 seconds ahead

ELECTRONICALLY FILED - 2022 Mar 01 11:03 AM - ORANGEBURG - COMMON PLEAS - CASE#2022CP3800326

    t. in failing to have the requisite knowledge and skill regarding his vehicle's total stopping distance at a given speed;

    u. in attempting an improper and dangerous turning and/or lane change maneuver;

    v. in failing to operate his vehicle while distracted; and,

    w. in operating his vehicle while fatigued or tired.

25. Defendant Olson's careless, negligent, grossly negligent, willful, wanton, reckless and unlawful acts were the direct and proximate cause of the collision resulting in the injuries and damages to Plaintiff.

26. Plaintiff is informed and believe that he is entitled to judgment against Defendant Olson for actual and punitive damages in an appropriate amount.

**FOR A SECOND CAUSE OF ACTION**
**(Against Defendants Truckmovers.com or Dealers Choice)**
**Respondeat Superior/Agency-Principal Liability**

27. Plaintiffs repeat and reallege paragraphs 1-26 as if verbatim.

28. At all times relevant to the allegations contained in this Complaint, the Defendant Olson was working in the course and scope of his employment for the Defendants Truckmovers.com or Dealers Choice, or was otherwise acting as an agent or servant of the Defendants Truckmovers.com or Dealers Choice.

29. The Defendants Truckmovers.com or Dealers Choice is liable for the acts and omissions of the Defendant Olson under the doctrines of respondeat superior, master/servant, and/or agent/principal.

30. At all times relevant to this Complaint the Defendant Olson was operating a commercial motor vehicle in interstate commerce under the USDOT authority granted Truckmovers.com or Dealers Choice

9

31.     Defendants Truckmovers.com or Dealers Choice are liable for the acts and omissions of Defendant Olson while he was operating under its authority by virtue of the Federal Motor Carrier Safety Regulations.

32.     The Plaintiff is informed and believe that he are entitled to judgment against the Defendants Truckmovers.com or Dealers Choice for actual and punitive damages in an appropriate amount.

### FOR A THIRD CAUSE OF ACTION
**(Against Defendants Truckmovers.com or Dealers Choice)**
**Negligent Hiring, Training, Supervision, Retention and/or Monitoring**

33.     Plaintiff repeats and realleges as if verbatim paragraphs 1-32.

34.     The Defendants Truckmovers.com or Dealers Choice operates as commercial motor carriers.

35.     In return for the privilege to operate commercial motor vehicles on the public roadways, prospective motor carriers must make certain safety related certifications and verifications.

36.     Motor carriers such as Defendants Truckmovers.com or Dealers Choice are required to submit a Form MCS-150 to the Federal Motor Carrier Administration and obtain an USDOT number.

37.     Each Form MCS-150 Defendants Truckmovers.com or Dealers Choice submitted or will submit contains a Certification Statement whereby Defendants Truckmovers.com or Dealers Choice declares under the penalty of perjury that it is familiar with the Federal Motor Carrier Safety Regulations and/or Federal Hazardous Materials Regulations

38. Motor Carriers such as Defendants Truckmovers.com or Dealers Choice are required to submit a Form OP-1 to the Federal Motor Carrier Administration in order to gain interstate operating authority.

39. The Form OP-1 submitted by Defendants Truckmovers.com or Dealers Choice contains a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that they are subject to the pertinent portions of the U.S. DOT's Federal Motor Carrier Safety Regulations ("FMCSR") at 49 CFR, Chapter 3, Subchapter B (Parts 350-399).

40. The Form OP-1 submitted by Defendants Truckmovers.com or Dealers Choice contains a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that they have access to and are familiar with all applicable U.S. DOT regulations relating to the safe operation of commercial vehicles and that they will comply with the regulations.

41. Each Form OP-1 submitted by Defendants Truckmovers.com or Dealers Choice contains a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that, at a minimum, they:

   a. have in place a system and an individual responsible for ensuring overall compliance with the FMCSR;

   b. can produce a copy of the FMCSR;

   c. have in place a driver safety training/orientation program;

   d. are familiar with DOT regulations governing driver qualifications and have in place a system for overseeing driver qualification requirements (49 CFR Parts 391); and,

   e. have in place policies and procedures consistent with DOT regulations governing driving and operational safety of motor vehicles.

42.     Reasonably safe motor carriers develop and implement policies, practices, and procedures to give effect to the minimum safety standards contained in the Federal Motor Carrier Safety Regulations to reduce or eliminate preventable collisions that may cause injury, death, or property damage on the public roadways.

43.     Reasonably safe motor carriers train and educate their drivers regarding the safe operation of commercial motor vehicles.

44.     Reasonably safe motor carriers utilize information and training materials from industry associations and third party safety vendors such as J.J. Keller & Associates, Inc., the "Smith System," Pro-Tread, and/or the National Safety Council to train and educate their drivers regarding the safe operation of commercial motor vehicles.

45.     The safe operation of commercial motor vehicles includes practices and procedures related to speed management, space management, seeing ahead, total stopping distance, the principles and procedures for proper turns, entering traffic, hazard perception, accident countermeasures, and fatigue and distracted driving awareness.

46.     Reasonably safe motor carriers utilize publicly available government, industry, and trade publications regarding the preventability of highway collisions to design, develop, and implement safety management controls, which are designed to reduce collisions involving commercial motor vehicles.

47.     Motor carriers should never allow or permit a driver to operate their commercial motor vehicles if the driver does not have the required knowledge or skill to safely operate the vehicle.

48.     To be qualified to operate a commercial motor vehicle, a driver must have experience and/or training to safely operate the type of vehicle; must be physically qualified;

must have a currently valid CDL, and must furnish the motor carrier a list of current driving violations.

49. To operate a commercial motor vehicle under Defendants Truckmovers.com or Dealers Choice operating authority, the prospective driver is required to complete a written application containing the following information:

    a. the nature and extent of the driver's experience;

    b. a list of all accidents in the previous 3 years;

    c. a list of all violations of motor vehicle laws in the previous 3 years;

    d. a detailed description of any denial, revocation, or suspension of any drivers licenses or permits;

    e. employment information for the previous 3 years; and,

    f. the names of all employers for whom the driver has operated a commercial motor vehicle for the previous 7 years.

50. Before a motor carrier such as Defendants Truckmovers.com or Dealers Choice may allow or permit a driver to operate a commercial motor vehicle under its operating authority, the motor carrier must:

    a. obtain the driver's motor vehicle record from the applicable state agency for the previous 3 years; and,

    b. investigate the driver's safety performance history with all DOT regulated employers for the previous 3 years;

51. Once a motor carrier such as Defendants Truckmovers.com or Dealers Choice hires a commercial driver, every twelve months thereafter the driver must submit a written list of all traffic violations the driver received in those twelve months.

52.     Once a motor carrier such as Defendants Truckmovers.com or Dealers Choice hires a commercial driver, every twelve months thereafter the motor carrier must obtain from the relevant state agency a list of traffic violations for the previous year and maintain a copy of the record in the driver's qualification file.

53.     Motor carriers such as Defendants Truckmovers.com or Dealers Choice are required to maintain a Driver Qualification File meeting the requirements of 49 CFR § 391.51 for the duration of the driver's employment with the motor carrier plus three years.

54.     In addition, drivers employed by, or operating under the authority of, motor carriers such as Defendants Truckmovers.com or Dealers Choice, are required to complete and turn in to their employer trip envelopes at least every 13 days. Such trip envelopes include, but are not limited to, the driver's daily Record of Duty Status logs and pre-trip and post-trip vehicle inspection reports.

55.     Drivers' daily logs record how much time each driver spends on duty, on duty not driving, off duty, and in a sleeper birth. Driver logs also require drivers to indicate how many miles they drove during each 24 hour period and their locations at each change of duty status.

56.     In addition to the required daily logs and vehicle inspection reports, it is standard in the industry for motor carriers also to collect information from their drivers, such as fuel receipts, entry and departure records, and other supporting documentation that verifies the times that their drivers were at specific locations.

57.     In addition to the required daily logs, vehicle inspection reports, and supporting documentation, reasonably safe motor carriers utilize available technology such as GPS tracking systems and in cab communications systems to monitor the safety performance of their drivers.

58. It is standard in the industry for motor carriers to use the information contained in the required daily driver logs, vehicle inspection reports, and other supporting documents to audit the safety performance of their drivers.

59. It is also standard in the industry for motor carriers to use any additional information, such as in-cab communications and GPS tracking to audit the safety performance of their drivers.

60. It is standard in the industry for motor carriers to use the information contained in the required daily driver logs, vehicle inspection reports, and other supporting documentation to audit the safety performance of their drivers to ensure that their drivers are not violating hour of service rules, to ensure that their drivers do not average speeds in excess of what is safe, and otherwise verify that the information contained in the driver's logs is accurate and truthful.

61. Auditing drivers' daily logs, vehicle inspection report, supporting documents, in-cab communications, and GPS tracking information increases the likelihood that a motor carrier's drivers are operating their commercial vehicles safely and decreases the risk of a preventable crash.

62. Motor carriers should never allow or permit a driver to operate their commercial motor vehicles if the driver is not qualified to do so.

63. Motor carriers should never allow or permit a driver to operate their commercial motor vehicles if an audit of the driver's logs, vehicle inspection reports, supporting documents, in-cab communications, and GPS tracking information indicates that the driver has a higher than safe average speed.

64. Motor carriers should never allow or permit a driver to operate their commercial motor vehicles if an audit of the driver's logs, vehicle inspection reports, supporting documents,

in-cab communications, and GPS tracking information indicates that the driver operates his vehicle in violation of the hours of service rules.

65. Motor carriers should never allow or permit a driver to operate their commercial motor vehicles if an audit of the driver's logs, vehicle inspection reports, supporting documents, in-cab communications, and GPS tracking information indicates that the driver is not accurate and truthful in the completion of his logs.

66. Motor carriers should never allow or permit a driver to operate their commercial motor vehicles if the driver does not have the required knowledge or skill to safely operate the vehicle.

67. It is standard in the industry for careful motor carriers to regularly check their Safety Measurement System details.

68. The FMCSA's Safety Measurement System (SMS) provides an assessment of a motor carrier's on-road performance results within seven safety related categories. Motor carriers are scored on a percentile basis as compared to other similar carriers.

69. It is standard in the industry for motor carriers to regularly monitor their SMS scores and to address any areas of noncompliance before they lead to collisions.

70. The injuries and damages incurred by the Plaintiff were directly and proximately caused by the Defendants Truckmovers.com or Dealers Choice careless, negligent, grossly negligent, willful, wanton, reckless, and unlawful acts in one or more of the following particulars by failing to use reasonable care in the:

    a.    failing to design, develop, and implement adequate safety management controls related to speed management, space management, seeing ahead, total stopping

distance, stopping, hazard perception, accident countermeasures, and fatigue and distracted driving awareness;

b.  failing to train Defendant Olson regarding speed management, space management, seeing ahead, total stopping distance, the principles and procedures for stopping, hazard perception, accident countermeasures, and fatigue and distracted driving awareness;

c.  failing to properly monitor and supervise the driving habits of Defendant Olson;

d.  supervision of its business operations in failing to properly monitor the driving habits and records of its drivers, employees, and/or agents, specifically the Defendant Olson;

e.  supervision of its drivers, employees, and/or agents, specifically the Defendant Olson;

f.  instruction of its drivers, employees, and/or agents, specifically the Defendant Olson;

g.  entrustment of a tractor trailer to its drivers, employees, and/or agents, specifically the Defendant Olson;

h.  compliance with federal and/or state regulations and industry standards, as referenced in this Complaint and as developed during the discovery in this case;

i.  improperly auditing the logs and supporting documentation of its drivers, employees, and/or agents, specifically the Defendant Olson;

ELECTRONICALLY FILED - 2022 Mar 01 11:03 AM - ORANGEBURG - COMMON PLEAS - CASE#2022CP3800326

j.  failing to utilize available information and technology to properly monitor its drivers, employees, and/or agents, specifically the Defendant Olson for compliance with company polices and/or state and federal regulations;

k.  in allowing the Defendant Olson to operate a commercial motor vehicle despite knowledge of his inability to do so safely;

l.  in failing to have adequate safety management controls in place to ensure compliance with the required safety fitness standard;

m.  in failing to budget an appropriate amount of money to design, develop, and implement safety management controls in the areas of speed management, space management, seeing ahead total stopping distance, the principles and procedures for proper turns, entering traffic, hazard perception, accident countermeasures, and fatigue and distracted driving awareness; and,

n.  in failing to utilize available technology to monitor and audit the safety performance of its driver's including Defendant Olson.

71.  The Defendants Truckmovers.com or Dealers Choice's careless, negligent, willful, wanton, reckless, and unlawful acts were the direct and proximate cause of the collision and resulting injuries and damages to Plaintiff.

**WHEREFORE,** the Plaintiff prays for judgment against the Defendants for actual and punitive damages in an appropriate amount to be determined at trial, the costs of this action, and for such other and further relief as the Court may deem just and proper.

                        *s/ William H. McAngus, Jr.*
                        William H. McAngus, Jr.
                        The Carolina Law Group
                        824 Meeting Street
                        West Columbia, South Carolina 29169
                        (803) 881-1110
                        (803) 661-6055 (FAX)
                        hugh@thecarolinalawgroup.com

                        Attorney for Plaintiffs

Dated: March 1, 2022

ELECTRONICALLY FILED - 2022 Mar 01 11:03 AM - ORANGEBURG - COMMON PLEAS - CASE#2022CP3800326